# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GOLDMAN SACHS BANK USA**<br>**200 West Street**<br>**New York, NY 10282**<br><br>      **Plaintiff,**<br><br>**vs.**<br><br>**1311 R STREET NW L.L.C.**<br>**1734 20th Street NW**<br>**Washington, DC 20009**<br><br>**SERVE:**<br>**CT CORPORATION SYSTEM, Registered**<br>**Agent**<br>**1015 15th Street NW, Suite 1000**<br>**Washington, DC 20005**<br><br>**and**<br><br>**MATTHEW SHKOR**<br>**1738 R Street NW**<br>**Washington, DC 20009**<br><br>      **Defendants.** | Case No. _____ |

## VERIFIED COMPLAINT FOR APPOINTMENT
## OF A RECEIVER, INJUNCTIVE AND OTHER RELIEF

COMES NOW Plaintiff, GOLDMAN SACHS BANK USA ("Lender" or "Plaintiff"), by and through its undersigned counsel, and states as follows for its Verified Complaint for Appointment of a Receiver, Injunctive and Other Relief ("Complaint") against Defendants, 1311 R STREET NW L.L.C. ("Borrower") and Matthew Shkor ("Guarantor," and collectively with Borrower, "Defendants"). Plaintiff seeks the appointment of a receiver for real and personal property owned and operated by Borrower and located in Washington, DC, for the purpose of taking control of and safeguarding, the real property and all personal property located thereon,

completing construction of improvements located on the real property, and executing such documents in the name of the Borrower as may be necessary to resolve certain title issues relating to the property, all as an incident to Plaintiff's enforcement of its security interest in the property, through foreclosure or other remedies. Plaintiff also asks for a temporary restraining order and preliminary and permanent injunctive relief in support of the receivership, and in support of Plaintiff's position as secured creditor. The grounds for the appointment of the receiver and other relief are more fully set forth below and in the exhibits attached hereto.

## JURISDICTION AND VENUE

1.      Lender is a New York-state chartered bank with its principal place of business in New York, New York.

2.      Borrower is a limited liability company organized under the laws of the District of Columbia and the owner, in fee simple, of the real property that is the subject of this action and described in more detail herein.

3.      Guarantor is an adult citizen of the District of Columbia and is the sole and managing member of Borrower.

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendants are citizens of different states and the amount in controversy, exclusive of interest and costs, is greater than $75,000.00.

5.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the real property that is the subject of this receivership proceeding is located in the District of Columbia which is within the jurisdiction of this Court.

6.      This Court has personal jurisdiction over Defendants pursuant to the provisions of D.C. Code §§ 13-422, 13-423(a)(1), and 13-423(a)(5), since Defendants are domiciled in or

organized under the laws of the District of Columbia, and since Borrower has an interest in real property located in the District of Columbia.

## BRIEF FACTUAL BACKGROUND

7.     Borrower is the owner of real property and improvements thereon located at 1311 R Street NW, Washington, DC 20009, and described in more detail in the Deed of Trust (as hereinafter defined) (the "Property").

8.     Upon information and belief, Borrower has been in possession of the Property with the intent of sub-dividing and developing it into multiple residential condominium units since approximately April 2017.

9.     Lender is the holder of a Promissory Note dated October 4, 2018 (the "Note") made by Borrower to the order of Lender, evidencing a loan (the "Construction Loan") from Lender to Borrower in the original principal sum of $2,445,850.00 (the "Indebtedness").  A true and correct copy of the Note is attached hereto marked **Exhibit 1**.

10.     The Construction Loan is further evidenced by a Construction Loan Agreement between Borrower and Lender dated October 4, 2018, as amended by that certain Addendum to Loan Agreement of event date (collectively, the "Loan Agreement"), a true and correct copy of which is attached hereto marked **Exhibit 2**.

11.     Repayment of the Note and performance of the Borrower's obligations under the Loan Agreement is secured, in part, by that certain Construction Deed of Trust from Borrower to Standard Title Group, LLC ("Trustee") for the benefit of Lender dated October 4, 2018, and recorded October 11, 2018, as Document # 2018102509 in the Recorder of Deeds for the District of Columbia (the "Deed of Trust").  A true and correct copy of the Deed of Trust is attached hereto as **Exhibit 3**.

12.     Repayment of the Note and performance of the Borrower's obligations under the Loan Agreement is also secured, in part, by that certain Commercial Security Agreement dated October 4, 2018, between Borrower and Lender (the "Security Agreement"), a true and correct copy of which is attached hereto as **Exhibit 4**.

13.     Lender's security interest in the collateral described in the Security Agreement was perfected by the filing of a UCC Financing Statement on October 11, 2018, as Document #2018102511 in the Recorder of Deeds for the District of Columbia, a true and correct copy of which is attached hereto as **Exhibit 5**.

14.     Guarantor promised to guaranty payment of the Indebtedness and performance of Borrower's obligations under the Note, the Loan Agreement, the Deed of Trust, and the Security Agreement pursuant to (a) a Commercial Guaranty dated October 4, 2018, and (b) a Completion Guaranty dated October 4, 2018 (collectively, the "Guarantees"), true and correct copies of which are attached hereto as **Exhibits 6 & 7**. The Note, the Loan Agreement, the Deed of Trust, the Security Agreement, the Guarantees, and all other documents executed or delivered in connection with the Construction Loan are hereinafter referred to collectively as the "Loan Documents."

15.     The Deed of Trust conveyed into trust and created a security interest in the Property in favor of the Lender as to, among other things:

    a.   the Property and all personal property and improvements thereon;

    b.   all present and future leases and all rents from the Property (the "Rents"); and

    c.   All proceeds of any sale of the Property to the extent they do not exceed the amounts outstanding under the Loan Documents (the "Proceeds").

16.     The Security Agreement conveyed a security interest in favor of Lender in certain collateral described therein (collectively, the "Collateral"), including the following:

All inventory, equipment, accounts . . ., chattel paper, instruments . . . , letter-of-credit rights, letters of credit, commercial tort claims, documents, deposit accounts,

investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); . . . ; all fixtures; . . . ; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; . . .; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

17.     Lender is the owner, holder, and beneficiary of the Note, the Deed of Trust, and the Security Agreement, the holder of a security interest in the Property and the Collateral conveyed by the Deed of Trust and the Security Agreement, and all rights and remedies under the Note, the Deed of Trust, and the Security Agreement.

18.     Defendants are in default under the Note and the other Loan Documents for, among other things, failing to pay the Indebtedness at maturity pursuant to the terms of the Loan Documents.

19.     As a consequence of said default, on September 16, 2020, Lender demanded payment in full of all sums outstanding. A true and correct copy of such demand is attached hereto as **Exhibit 8**.

20.     As of December 31, 2020, Defendants will owe Lender the following amounts on account of the Indebtedness:

| | |
|---|---|
| Principal: | $2,422,899.25 |
| Interest (through 12/31/2020): | $557,390.51 |
| Late Charges: | $3,469.84 |
| Unpaid Loan Charges/Advances: | $18,475.92 |
| Estimated Payoff Charges: | $28,029.00 |
| Total: | $3,030,264.52 |

21.     Additional interest will continue to accrue on the unpaid principal balance of the Indebtedness at the rate of 18.3739% *per annum* or $1,219.67 *per diem* for each and every day

from and after December 31, 2020 until date of payment. Lender has incurred and will continue to incur additional costs, expenses and fees, including attorneys' fees, which are all recoverable under the Note and the other Loan Documents.

22.     Further, upon information and belief, Borrower has failed to pay certain subcontractors and/or materialmen who supplied work and/or materials to the development of the Property. Borrower's failure to timely pay such entities has resulted in the filing of several mechanic's liens against the Property in the amounts of $205,739.58, $13,300.00, and $2,527.58,[1] and a pending enforcement lawsuit by at least one such lien claimant.

23.     Borrower's actions or inactions are in clear violation of Borrower's duty to discharge or otherwise cure any lien filed on the Property, as described in Page 3 of the Note and Page 10 of the Construction Loan, the latter of which provides in material part:

> [T]he following shall constitute an Event of Default: "Any lien (including a mechanics lien) is issued of **levied on all or any portion of the Property and Borrower has not cured within fourteen (14) days**."

[Emphasis Added].

24.     Defendants are also in default under the Note and the other Loan Documents because Borrower has abandoned the Property, locked its doors, and ceased business operations, construction and development of any kind at the Property while failing to properly secure it from damage.

25.     Such conduct is in clear breach or abrogation of (A) Defendants' duty to protect the Property, (B) Defendants' duty not to cease construction prior to completion, and (C) Lender's right to enter and inspect the Property, described on in the Loan Documents and set forth in detail

---

[1] The Mechanic's Liens filed against the Property in the Recorder of Deeds for the District of Columbia are recorded as (1) Document #2019081782 for $205,739.58 on behalf of CMX Construction Group, LLC, (2) Document #2020020372 for $13,300.00 on behalf of AG's Enterprise, Inc., and (3) Document #2019074899 for $2,527.58 on behalf of Architectural Ceramics, Inc.

as follows:

    A.  <u>Defendants' Duty to Protect</u>
[Borrower] **agrees neither to abandon nor leave unattended the Property**.
[Borrower] shall do all other acts, in addition to those acts set forth above in
this section, which from the character and use of the Property are reasonably
necessary to protect and preserve the Property. (*See* Deed of Trust, **Exhibit 3**,
Page 2).

    B.  <u>Defendants' Duty to Complete Construction Before Cessation of Operations</u>
The following constitutes an Event of Default: "Prior to the completion of
construction of the Improvements and equipping of the Project, **the
construction of the Improvements or the equipping of the Project is
abandoned or work thereon ceases for a period of more than ten (10) days
for any reason**, or the Improvements are not completed for purposes of final
payment to the General Contractor prior to the Completion Date, regardless of
the reason for the delay." (*See* Loan Agreement, **Exhibit 2**, Page 10).

    C.  <u>Lender's Right to Enter</u>
**Lender and Lender's agents and representatives may enter upon the Real
Property at all reasonable times** to attend to Lender's interests and to inspect
the Real Property for purposes of Grantor's compliance with the terms and
conditions of this Deed of Trust, the Loan Agreement and the other Related
Documents. (*See* Deed of Trust, **Exhibit 3**, Page 2 & Loan Agreement, **Exhibit
2**, Page 9).

[Emphasis Added].

26.    Despite the foregoing, on November 6, 2020, DCMI Mid-Atlantic, Inc. inspected

the Property on behalf of Lender and produced a report detailing its findings dated December 16,

2020 (the "DCMI Report") estimating that only 70% of the construction work on the Property has

been completed. A true and correct copy of the DCMI Report is attached hereto as **Exhibit 9**.

27.    Upon information and belief, and based on the findings in the DCMI Report, certain

fixtures and improvements installed at various locations throughout the Property have been

removed without Lender's consent, resulting in damage to and diminution in value of the Property.

Removal of these fixtures and improvements without Lender's consent is a further violation of

Borrower's obligations under the Deed of Trust, among other documents.

28.    Defendants have also failed to connect the Property to electricity, meaning the

Property is susceptible to damage from, among other things, severe cold, snow, ice and other effects of winter weather in the District of Columbia.

29.     Most concerning is the fact that Defendants have abandoned the Property with an unfinished roof allowing water intrusion into the structure, thereby damaging the Property and making it susceptible to further damage due to winter weather, thereby putting Lender's Collateral at risk of further damage, destruction or diminution in value.

30.     Defendants' actions and inactions as described above are a clear violation of both (A) Defendants' duty to protect the Property, and (B) Defendants' duty to maintain the Property described on Page 2 of the Deed of Trust.

31.     In response to Defendants' actions and inactions with respect to the Property, on December 18, 2020, Lender, through counsel, served a demand on Defendants to safeguard and protect the Property, in the form attached hereto and marked **Exhibit 10**.  Defendants have failed to respond to or acknowledge this demand and have failed to take action to safeguard and protect the Property.

32.     Defendants continue to be in default of their obligations under the Loan Documents.

33.     As one of a number of remedies for the Defendants' defaults, Lender is entitled to foreclose on and sell the Property in order to satisfy the Indebtedness pursuant to the terms of the Deed of Trust.

34.     Lender has been prevented from proceeding with foreclosure under the Deed of Trust because of various title issues affecting the Property, specifically including (a) the fact that the plat of subdivision creating the Property was signed, apparently in error, by an entity identified as "1311 R Street LLC," which is not the legal name of the Borrower and not an entity that exists

in the District of Columbia, and (b) was purportedly dated, again apparently in error, on January 9, 2017, approximately three months before the Borrower acquired title to the Property.

35.     Because Lender is not able to proceed with foreclosure until title can be perfected, Lender requires the appointment of a receiver over the Property to prevent further damage, waste and/or diminution in value to the Property pending resolution of the title issues.

<u>**COUNT I**</u>
**(Contractual and Statutory Right to Receivership)**

36.     Lender repeats and realleges the allegations in Paragraphs 1 through 35 as if set forth in full herein.

37.     Defendants are in default of their obligations under the Deed of Trust, the Security Agreement, and the other Loan Documents for, among other things, (A) failing to pay the Indebtedness at maturity; (B) failing to pay subcontractors and/or materialmen involved in Defendants' development of the Property resulting in at least one mechanic's lien recorded against the Property; (C) abandoning the Property; (D) refusing or failing to allow Lender to enter and inspect the Property; (E) removing fixtures and improvements from the Property without the Lender's consent or approval; and (F) failing to maintain the Property and protect it from damage and diminution in value.

38.     The Loan Agreement provides that, upon the occurrence of a default under the Note and the Deed of Trust, and regardless of the solvency of the Borrower and even in the absence of waste, the Lender may take and maintain possession of the Property while exercising any of its rights and remedies set forth in the Loan Documents.  *See* Loan Agreement, **Exhibit 2**, Page 5.

39.     The Deed of Trust further provides that, upon the occurrence of a default, Lender has the right at its option, and without notice or regard to the Borrower's solvency, to "have a receiver appointed to take possession of all or any part of the Property . . . to operate the Property

preceding foreclosure or sale, and to collect the Rents from the Property and to sell the Property and apply the proceeds of such Rents and sale, over and above the cost of the receivership, against" indebtedness due and owing to Lender.  *See* Deed of Trust, **Exhibit 3**, Page 6.

40.    The Security Agreement contains a similar consent by Borrower to the appointment of a receiver over the Collateral following an event of default and at the request of the Lender. *See* Security Agreement, **Exhibit 4**, Page 5.

41.    Pursuant to the aforementioned provisions of the Loan Documents, Lender has the right to have a receiver appointed to operate, manage, safeguard and, if necessary and appropriate (and with Lender's and the Court's prior approval), market and sell the Property and the Collateral. Lender seeks immediate appointment of a receiver for the Property and the Collateral which is necessary and desirable to protect the liens and encumbrances of the Deed of Trust and the Security Agreement with respect to the Property and the Collateral, and to preserve and protect the Property and the Collateral against damage, loss, waste or destruction, pending its sale through foreclosure or other disposition.

42.    In addition, and pursuant to pertinent provisions of the Loan Agreement and the Deed of Trust, Borrower has agreed to provide further assurances to Lender and to "execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate," all such documents as Lender determines are "necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) [Borrower's] obligations under the Loan Agreement, the Note, [the] Deed of Trust, and the Related Documents, and (2) the liens and security interests created by [the] Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by [Borrower]."

*See* Deed of Trust, **Exhibit 3** to Complaint, Pages 5-6; *see also* Loan Agreement, **Exhibit 2** to Complaint, Page 9.

43.     If Borrower should fail or refuse to provide such further assurances Borrower has expressly agreed that "Lender may do so for and in the name of [Borrower] and at [Borrower's] expense," irrevocably appointing "Lender as [Borrower's] attorney-in-fact, coupled with an interest, for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph." *See* Deed of Trust, **Exhibit 3** to Complaint, Page 6.

44.     Lender is further entitled to appointment of a receiver over the Property and the Collateral because Defendants apparently lack the financial resources to manage the Property, to safeguard and protect the Collateral, to pay their debts associated with the development of the Property, to pay utilities for the Property, or to protect the Property and the Collateral from dissipation or waste.

45.     Lender lacks an adequate remedy at law. Lender will suffer irreparable harm if a receiver is not appointed to take possession and control of the Property and the Collateral because there exists a real and immediate risk that Borrower's abandonment of the Property will cause the Property and the Collateral to be dissipated, further damaged or diminished in value.

46.     Lender requests that Mark G. Anderson Consultants, Inc. ("MGAC" or the "Receiver") be appointed receiver for the Collateral. MGAC has substantial experience and knowledge in construction and project management, and in the management and preservation of commercial real property in particular, as is evidenced by the Affidavit of Mark G. Anderson, President of MGAC, which is appended hereto marked **Exhibit 11**.

47.     The Receiver is fit and proper to act as receiver herein; the Receiver holds no interests that would interfere with the proper performance of its duties as a receiver in this case; and the Receiver is willing to serve as receiver, on the terms and for the compensation specified in **Exhibit 11**.

48.     The relief requested is warranted in light of the continuing defaults by Defendants, the condition and risk to the Collateral, and the clear contractual entitlement to the appointment of a receiver as set forth in the Loan Documents.

49.     Lender will suffer immediate, irreparable, and material loss and injury unless a receiver is immediately appointed.

<u>**COUNT II**</u>
**(Temporary Restraining Order, Preliminary and Permanent Injunction)**

50.     Lender repeats and realleges herein the allegations set forth in paragraphs 1 through 49 hereof.

51.     Lender seeks and is entitled to a temporary restraining order and preliminary and permanent injunction ordering Defendants to turn over and release to the Receiver all records relating to the Property, and ordering Defendants to turn over and release to the Receiver all contracts, agreements, permits, licenses, drawings, specifications and other items relating to the Property.

52.     Lender further seeks an order enjoining Defendants from interfering with its rights under the Deed of Trust, and from interfering with any Receiver appointed by the Court.

53.     Lender will suffer irreparable harm if the relief sought herein is not granted.

54.     Lender lacks an adequate remedy at law.

**WHEREFORE,** the Plaintiff, GOLDMAN SACHS BANK USA, respectfully requests:

A.     That this Court appoint Mark G. Anderson Consulting, Inc. as the receiver of the Property and Collateral, on the terms and for the compensation specified in **Exhibit 11** of this Complaint;

B.     That this Court authorize and empower said Receiver to take possession of and manage the Property and the Collateral on behalf of Plaintiff and Defendants, and to take any and all actions as it may deem necessary and proper to manage, lease, insure and protect the Collateral; to preserve and protect the Property and the Collateral against vandalism, theft, burglary, and unauthorized intrusion or trespass by any third party and against destruction or damage by fire, water or the elements; to collect any rents and profits of the Collateral and to use the same and such other funds as may become available to said Receiver, by way of advancement or otherwise, in the payment of the expenses of said Receivership and the management and operation of the Property; with the prior consent of the Plaintiff, to hire a new management company to preserve and protect the Collateral, and through such company to hire attorneys, accountants, bookkeepers, real estate brokers, maintenance personnel, groundskeepers, auctioneers, electricians, plumbers, management agents, advertisement and media representatives, and such other related employees and independent contractors, and to procure such policies of insurance, as it may deem necessary and appropriate to the proper management, operation, protection and/or preservation of the Collateral, and to the collection of the profits therefrom;

C.     That this Court further authorize and empower the Receiver, with the prior approval of Plaintiff, to execute, deliver, and file with the appropriate public officials, all such documents as are necessary or appropriate to remedy the title issues with the Property, including but not limited to a corrected plat of subdivision to be approved by and filed with the Office of the Surveyor for the District of Columbia;

D.      That this Court further authorize and empower the Receiver, with the prior approval of Plaintiff, to hire contractors to complete the construction and development of the Property and, thereafter, to market and advertise the Property for sale, and to sell the Property (including all personal property located thereon) for the highest price which, in his discretion, and subject to review and approval by the Plaintiff and the Court, is the best price available, with the proceeds from such sale to be applied in the same manner as the proceeds of a power of sale foreclosure sale are to be applied, as provided by the terms of the Deed of Trust;

E.      That this Court recognize and affirm the Plaintiff's right to credit bid its indebtedness at any sale conducted by the Receiver and approved by the Court;

F.      That this Court declare and determine the rights of the parties under the Note, the Deed of Trust, and the other Loan Documents, and in so doing determine that Plaintiff is entitled to exercise all of its rights and remedies under the Deed of Trust, including the assumption of control of the Property;

G.      That this Court grant Plaintiff's motion for a temporary restraining order and preliminary and permanent injunction, ordering Defendants to turn over to the Receiver all rents, issues and profits arising from the Property, and similarly decreeing that the fee owner, operators, and managers of the Property and the Collateral and all other persons (including the Defendants' accountants) shall relinquish possession of the Property and the Collateral, and turn over to said Receiver all books, records (including all documents reflecting notes, loans, leases, claims, or contracts held by Defendants with respect to the Property and the Collateral), ledgers, check books, accounting and bookkeeping files, inventory list, rent rolls or lists, orders, agreements, service contracts, vendor agreements, municipal notices, post office boxes, trust boxes, safety deposit

boxes, all relating to the operation of the Property or any of its facilities and to the Collateral, immediately upon entry of this Order and service of a copy of this Order upon the Defendants;

H.     That this Court award attorneys' fees and all related collection and enforcement costs incurred by Plaintiff, as provided for in the Note, the Deed of Trust, and the other Loan Documents; and

I.     That this Court grant such other and further relief as is necessary and appropriate.

December 29, 2020.

Respectfully submitted,

 */s/ Richard E. Hagerty*
Richard E. Hagerty (DC Bar # 411858)
Mary C. Zinsner (DC Bar # 430091)
TROUTMAN PEPPER HAMILTON SANDERS LLP
401 9th Street NW, Suite 1000
Washington, DC 20004
Tel:     (202) 274-1910
Fax:     (703) 448-6520
Email:  richard.hagerty@troutmansanders.com
            mary.zinsner@troutmansanders.com

*Attorneys for Plaintiff, Goldman Sachs Bank USA*

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY

I declare under penalty of perjury that I am Yvonne Gruenberg, an authorized signatory for

Goldman Sachs Bank USA, a New York-state chartered bank, that I have read the allegations set

forth above in the Complaint, and that to the best of my information and belief such representations

are true and accurate.


12/28/20
Date

Yvonne Gruenberg